HOGAN LOVELLS US LLP
Robert B. Hawk (Bar No. 118054)
Stacy R. Hovan (Bar No. 271485)
4085 Campbell Avenue, Suite 100
Menlo Park, California  94025
Telephone:      (650) 463-4000
Facsimile:      (650) 463-4199
robert.hawk@hoganlovells.com
stacy.hovan@hoganlovells.com

HOGAN LOVELLS US LLP
Mitchell E. Zamoff (*Pro Hac Vice application to be filed*)
Adam K. Levin (*Pro Hac Vice application to be filed*)
David M. Foster (*Pro Hac Vice application to be filed*)
Kathryn M. Ali (Bar No. 282042)
555 Thirteenth Street, NW
Washington, DC  20004
Telephone:      (202) 637-5600
Facsimile:      (202) 637-5910
mitch.zamoff@hoganlovells.com
adam.levin@hoganlovells.com
david.foster@hoganlovells.com
kathryn.ali@hoganlovells.com

Attorneys for Defendants
MYLAN PHARMACEUTICALS INC.
and MYLAN SPECIALTY L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KIMBERLY CORCORAN, and TODD BEAULIEU, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MYLAN PHARMACEUTICALS INC., and MYLAN SPECIALTY L.P.,<br><br>*Defendants*. | Case No.  4:16-CV-05983-JSW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>The Honorable Jeffrey S. White<br><br>Date:          March 10, 2017<br>Time:          9:00 a.m.<br>Courtroom:  5, 2nd Floor |

**NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT on March 10, 2017 at 9:00 a.m., or as soon thereafter as the matter may be heard by the Court, in the Courtroom of the Honorable Jeffrey White, located at the Oakland Courthouse, 1301 Clay Street, Courtroom 5, 2nd Floor, Oakland, California, Defendants Mylan Pharmaceuticals Inc. and Mylan Specialty L.P., by and through their attorneys of record, will, and hereby do, move the Court for an order dismissing the Class Action Complaint.

This motion will be made based on Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6).  This motion also will be based upon this Notice; the attached Memorandum of Points and Authorities; the complete files and records of this action; and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this motion.

Dated:  December 16, 2016                HOGAN LOVELLS US LLP


                                         By:  /s/ Robert B. Hawk
                                              Robert B. Hawk

                                         Attorneys for Defendants
                                         MYLAN PHARMACEUTICALS INC.
                                         and MYLAN SPECIALTY L.P.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs have standing to bring their claims;

2.      Whether Plaintiffs' claims are preempted by federal patent law;

3.      Whether Plaintiffs have pled their deception-based claims with the particularity required by Fed. R. Civ. P. Rule 9(b);

4.      Whether Plaintiffs have sufficiently alleged deceptive conduct pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, or the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A;

5.      Whether Plaintiffs have sufficiently alleged the elements of fraud by concealment;

6.      Whether Plaintiffs have sufficiently alleged the elements of negligent misrepresentation;

7.      Whether Plaintiffs have sufficiently alleged unfair conduct pursuant to the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, or the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A;

8.      Whether Plaintiffs have sufficiently alleged unlawful conduct pursuant to the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*;

9.      Whether Plaintiffs have sufficiently alleged causation;

10.      Whether Plaintiffs have sufficiently alleged the elements of unjust enrichment;

11.      Whether Plaintiffs have sufficiently alleged facts to support their request for a declaratory judgment.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

I.     PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS ................................. 6

       A.     Plaintiffs Have Not Pled Constitutional Standing. .................................................. 7

       B.     Plaintiffs Have Not Pled Statutory Standing for their California Consumer
              Protection Claims. ............................................................................................. 10

II.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL PATENT LAW ............... 12

III.   PLAINTIFFS FAIL TO STATE A CLAIM BASED ON DECEPTIVE CONDUCT
       (COUNTS I-VI) ............................................................................................................ 13

       A.     Plaintiffs Have Not Pled Any Actionable Misrepresentations or Omissions
              Related to Price Increases ................................................................................. 15

       B.     Plaintiffs Have Not Pled Any Actionable Misrepresentations or Omissions
              Related to Packaging ......................................................................................... 16

       C.     Plaintiffs Have Not Identified Any Other Relevant Deceptive Conduct ............... 17

IV.    PLAINTIFFS FAIL TO STATE A CLAIM BASED ON "UNFAIR" CONDUCT
       (COUNTS III AND IV) ................................................................................................. 18

V.     PLAINTIFFS FAIL TO STATE A CLAIM BASED ON UNLAWFUL CONDUCT
       (COUNT III) ................................................................................................................. 20

VI.    PLAINTIFFS HAVE NOT PLED THAT MYLAN CAUSED THEIR ALLEGED
       INJURIES (COUNTS I-VI) ........................................................................................... 21

VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT
       (COUNT VII) ................................................................................................................ 23

VIII.  PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY JUDGMENT
       (COUNT VIII) ............................................................................................................... 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ................................................................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 5, 17

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......................................................... 23, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 5, 19

*Biggins v. Well Fargo & Co.*,
266 F.R.D. 399 (N.D. Cal. 2009) ...................................................... 5, 17

*Biotech. Indus. Org. v. Dist. of Columbia* ("*Biotech*"),
496 F.3d 1362 (Fed. Cir. 2007) ........................................................ 12, 13

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
No. C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ....................................... 9

*Cel-Tech Commc'ns., Inc. v. L.A. Cell. Tel. Co.*,
20 Cal. 4th 163 (1999) ...................................................................... 18, 20

*Church of Scientology Int'l v. Kolts*,
846 F. Supp. 873 (C.D. Cal.1994) ......................................................... 25

*Consumer Fin. Prot. Bureau v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ................................................................ 6

*Ctr. for Sci. in Pub. Interest v. Bayer Corp.*,
No. C 09-05379 JSW, 2010 WL 1223232 (N.D. Cal. Mar. 25, 2010) ............................... 25

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ............................................................. 18, 20

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) ...................................................... 14

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ............................................................... 23

*Estrada v. Johnson & Johnson*,
No. 2:14-CV-01051-TLN, 2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) ........................... 8

*Eureka Broadband Corp. v. Wentworth Leasing Corp.*,
400 F.3d 62 (1st Cir. 2005) ................................................................ 13

*Ferreira v. Sterling Jewelers, Inc.*,
130 F. Supp. 3d 471 (D. Mass. 2015) ...................................................... 24

*Fisher v. Monster Beverage Corp.*,
    No. 13-57094, 2016 WL 3645098 (9th Cir. July 8, 2016)................................................... 14

*Golinski v. U.S. Office of Pers. Mgmt.*,
    824 F. Supp. 2d 968 (N.D. Cal. 2012) .............................................................................. 16

*Gould v. Bank of N.Y. Mellon*,
    123 F. Supp. 3d 197 (D. Mass. 2015) .............................................................................. 19

*Hines v. Davidowitz*,
    312 U.S. 52 (1941).............................................................................................................. 11

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013)......................................................................................................... 6

*In re Cal. Title Ins. Antitrust Litig.*,
    No. C 08-01341 JSW, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ................................. 5

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    582 F.3d 156 (1st Cir. 2009) ............................................................................................. 19

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ...................................................................................................... 11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).................................................................................... 5, 14

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ............................................................................................9, 11, 21

*Linkage Corp. v. Trs. of Boston Univ.*,
    425 Mass. 1 (1997) ........................................................................................................... 19

*Luttrell v. United States*,
    644 F.2d 1274 (9th Cir.1980)........................................................................................... 25

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007)............................................................................................ 18

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).................................................................................................... 7, 21

*Marram v. Kobrick Offshore Fund, Ltd.*,
    442 Mass. 43 (2004) ......................................................................................................... 14

*Martin v. Mead Johnson Nutrition Co.*,
    No. 09-11609-NMG, 2010 WL 3928707 (D. Mass. Sept. 30, 2010) .................................. 14

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    552 F.3d 47 (1st Cir. 2009) ............................................................................................. 23

*Mass. Employers Ins. Exch. v. Propac–Mass, Inc.*,
    420 Mass. 39 (1995) ......................................................................................................... 19

*Moran v. Prime Healthcare Mgmt., Inc.*,
  208 Cal. Rptr. 3d 303 (Cal. Ct. App. 2016) ...................................................................11, 20

*Mulder v. Kohl's Dep't Stores, Inc.*,
  No. 15-cv-11377-FDS, 2016 WL 393215 (D. Mass. Feb. 1, 2016) ...................................... 24

*Munns v. Kerry*,
  782 F.3d 402 (9th Cir. 2015) ............................................................................................... 6

*Myers-Armstrong v. Actavis Totowa, LLC*,
  No. C 08–04741 WHA, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009)................................. 8

*Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009)........................................................................................................... 10

*Pirozzi v. Apple Inc.*,
  913 F.Supp.2d 840 (N.D. Cal. 2012) ................................................................................... 8

*Raines v. Byrd*,
  521 U.S. 811 (1997)............................................................................................................. 6

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) .........................................................................21, 24

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
  72 Cal. App. 4th 861 (1999) ............................................................................................... 18

*S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*,
  No. CV 12-11663-GAO, 2016 WL 1732720 (D. Mass. Apr. 28, 2016) .............................. 14

*Salmon Spawning & Recovery All. v. Gutierrez*,
  545 F.3d 1220 (9th Cir. 2008) ........................................................................................... 21

*Sanofi-Synthelabo v. Apotex, Inc.*,
  470 F.3d 1368 (Fed. Cir. 2006) .......................................................................................... 12

*Shaulis v. Nordstrom Inc.*,
  120 F. Supp. 3d 40 (D. Mass. 2015) ................................................................................... 14

*Se. Pa. Transp. Auth. v. Gilead Scis., Inc.* ("*SEPTA*"),
  102 F. Supp. 3d 688 (E.D. Pa. 2015)...........................................................................12, 13, 19

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)...................................................................................................... 6, 7

*Swearingen v. Santa Cruz Nat., Inc.*,
  No. 13-CV-04291-SI, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) ................................. 11

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)......................................................................................5, 6, 11, 14

*Warth v. Seldin*,
  422 U.S. 490, 518 (1975) ..................................................................................................... 6

- vi -

*Williamson v. Reinalt-Thomas Corp.*,
    No. 5:11-CV-03548-LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) .................... *passim*

**STATUTES AND REGULATIONS**

28 U.S.C. § 45(a)........................................................................................................... 18

28 U.S.C. § 2201 ........................................................................................................... 25

Cal. Bus. & Prof. Code § 17200..............................................................................4, 18, 20

Cal. Bus. & Prof. Code § 17204.................................................................................... 11

Cal. Bus. & Prof. Code § 17500.................................................................................... 4

Cal. Civ. Code § 1750.................................................................................................... 4

Mass. Gen. Laws. Ch. 93A ...................................................................................... 4, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b)............................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 6

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 2, 16

NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05983-JSW

**INTRODUCTION**

This lawsuit is an inappropriate effort to capitalize on recent publicity surrounding the EpiPen® ("EpiPen") Auto-Injector and to misuse state consumer protection laws in the pursuit of class action litigation.   Plaintiffs Kimberley Corcoran ("Corcoran") and Todd Beaulieu ("Beaulieu") (collectively, "Plaintiffs") filed this Class Action Complaint ("Complaint") on behalf of a putative nationwide class of consumers who have purchased EpiPen devices at allegedly "inflated" prices.   Plaintiffs claim that by increasing the price of EpiPen devices beyond what they consider to be fair and reasonable, Defendants Mylan Pharmaceuticals Inc. and Mylan Specialty L.P. ("Defendants" or "Mylan") violated California and Massachusetts consumer protection laws, committed fraud and negligent misrepresentation, and unjustly enriched themselves at Plaintiffs' expense.[1]   Plaintiffs seek to force Mylan to change the price of EpiPen devices and to disgorge its profits.

Plaintiffs' Complaint is deficient as a matter of law and should be dismissed.   As a preliminary matter, Plaintiffs lack standing because they have not been injured in any actionable way.   Spending more than one wishes for a product does not give rise to legally cognizable injury.   Plaintiffs' claims also fail at the threshold because the EpiPen Auto-Injector is a patented pharmaceutical product.   As a result, all of Plaintiffs' state-law claims challenging Mylan's pricing of EpiPen devices are preempted by federal patent law.

In addition, Plaintiffs fail to allege conduct that is deceptive, unfair, or unlawful, and thus fail to state a claim for the violation of state consumer protection statutes.   Plaintiffs' reliance on news stories and blog posts cannot mask the fundamental problem with this case:  the law does not allow consumers to bring a claim merely because they think that the price they paid for a

---

[1] Mylan Pharmaceuticals Inc. ("MPI") is improperly named as a defendant because its business is limited to generic pharmaceuticals.   Mylan Specialty L.P. f/k/a Dey Pharma, L.P. ("Mylan Specialty") is responsible for business activities related to EpiPen products.   *See* Mylan N.V.'s Form 10-K dated February 16, 2016, at 4, *available at* http://investor.mylan.com/ (last visited Dec. 16, 2016) ("Our specialty pharmaceutical business is conducted by Mylan Specialty L.P."); *id.* at 9 ("Our specialty pharmaceutical business is conducted through Mylan Specialty," which has "worldwide rights" to the EpiPen Auto-Injector).   MPI reserves all rights to challenge its inclusion in this suit, but Defendants hope to resolve this issue with Plaintiffs through a voluntary dismissal in the near future.

1    product was too high.   This failure to identify any materially misleading statements or

2    omissions—or statements Plaintiffs actually relied on in making their purchases—is also fatal to

3    Plaintiffs' fraud and negligent misrepresentation claims.  And Plaintiffs' unjust enrichment claim

4    fails, too, because Plaintiffs did not directly confer any benefit upon Mylan that could give rise to

5    such a claim, nor is it unjust for Mylan to retain its profits.

6         Ultimately, Plaintiffs are asking this Court to determine the "correct" market price for

7    EpiPen Auto-Injectors, which it cannot do.  Mylan recognizes that some consumers may have

8    incurred higher out-of-pocket costs for EpiPen products in recent years.   But consumer

9    protection laws are meant to provide recourse when consumers have been harmed by fraudulent

10   or unfair business practices.   Try as they might, Plaintiffs cannot shoehorn the fundamental

11   premise of their Complaint—that, in their opinion, EpiPen products should cost less—into legal

12   claims for relief.  At best, the claims in this case raise legislative and policy issues, not valid

13   claims under California and Massachusetts law.   The Court thus should dismiss Plaintiffs'

14   Complaint with prejudice.

15                              **BACKGROUND**[2]

16        EpiPen Auto-Injectors are life-saving devices used for the emergency treatment of severe

17   allergic reactions, including anaphylactic shock, following exposure to allergens such as insect

18   bites and stings, foods, medicines, or other substances.  Compl. ¶¶ 1, 3; *see also id.* ¶¶ 19-22.[3]

19   These devices function by "using a spring-loaded needle to inject an adrenaline solution

20   (epinephrine) which can prevent anaphylactic shock when the device is pressed against the skin."

21

22   [2] Mylan denies the allegations in Plaintiffs' Complaint but, unless otherwise noted, assumes the
23   truth of those allegations solely for purposes of moving to dismiss under Rule 12(b)(6).

24   [3] Plaintiffs incorrectly list a number of "EpiPen products" that they assert are subject to their
     claims.  Compl. ¶ 7.  The only Mylan EpiPen products on the market are the EpiPen Auto-
25   Injector and EpiPen Jr Auto-Injector (both currently sold in two-packs), as well as Mylan's own
     authorized generic versions of these products that were introduced on December 16, 2016.  The
26   other items referenced by Plaintiffs are not EpiPen devices at all; they are advertising campaigns
     and slogans (e.g., "Be Prepared®" and "Never-See-Needle®"); a program that distributes
27   information via e-mail about EpiPen products ("My EpiPen®"); and a program through which
     Mylan has provided more than 700,000 free EpiPen products to nearly 67,000 schools across the
28   country ("EpiPen4Schools®").

1    *Id.* ¶ 20.   Mylan has the exclusive right and license to market, distribute, and sell EpiPen

2    products, which are protected by several United States patents on the injection device.[4]

3            Plaintiffs claim that they have been the victims of an "unlawful scheme" by which Mylan

4    increased the price of EpiPen devices in "unfair, exorbitant, and unconscionable" ways.  *Id.* ¶ 6.

5    According to the Complaint, this scheme consisted of three prongs.   First, Mylan allegedly

6    engaged in marketing campaigns and lobbying efforts to increase access to epinephrine auto-

7    injectors.   Plaintiffs (somewhat remarkably) complain that Mylan has expanded the permitted

8    bases for prescriptions of EpiPen devices to cover all patients with a risk of anaphylaxis, rather

9    than just those patients who had suffered a severe reaction in the past, and advocated for public

10   entity   legislation   that   would   "allow   restaurants   and   hotels   and   really   anywhere   you   are

11   congregating to store an EpiPen" device for emergency use.  Compl. ¶¶ 30-33.   Never mind that

12   such efforts have saved lives; according to Plaintiffs, these "extensive marketing, lobbying and

13   branding   efforts"   should   be   discouraged   because   they   have   allowed   Mylan   to   improperly

14   increase its share of the "auto-injector market" to 85%.   *Id.* ¶ 34.   Second, Plaintiffs allege that

15   Mylan decided to package EpiPen devices exclusively in two-packs after the National Institute of

16   Allergy and Infectious Diseases ("NIAID") released new guidelines recommending that doctors

17   "prescribe two doses of epinephrine in order to cover a minority of patients (around 20%) who

18   may not respond effectively to only one dose."  *Id.* ¶ 43.   Mylan publicly stated that this change

19   in packaging "aligns with these [NIAID] guidelines, as well as with the 2011 World Allergy

20   Organization (WAO) anaphylaxis guidelines."  *Id.* ¶ 46.   Plaintiffs allege, however, that this was

21   a   tactic   to   increase   profits   by   forcing   consumers   "to   pay   more   for   the   two   pack   product,

22   regardless of whether two pens were needed or not."  *Id.* ¶ 45.   Third, Plaintiffs allege that Mylan

23   has "inflated" the price of EpiPen devices since acquiring the product in 2007, to a price beyond

24   what Plaintiffs believe to be "fair and reasonable."  *Id.* ¶¶ 4, 35, 97, 142.

25   _____

26   [4]  The patents on the EpiPen Auto-Injector device include U.S. Patent numbers 7,449,012;
     7,794,432; 8,048,035; and 8,870,827, of which the court may take judicial notice.  *See Anderson*
27   *v.  Kimberly-Clark  Corp.*, 570 F. App'x 927, 932 (Fed. Cir. 2014).    Meridian Medical
     Technologies, Inc. ("Meridian") owns the patents related to EpiPen devices, and has granted
     Mylan the exclusive rights to market, distribute, and sell EpiPen products.  *See* Compl. ¶¶ 27-28.

28

- 3 -

The Complaint attempts to ascribe sinister intentions to these business activities by selectively quoting from recent news stories, blog posts, and the public testimony of a Mylan executive. *See id.* ¶¶ 48-77. These reports, all from September and October 2016, include details about Mylan's agreement to the terms of a settlement with the Department of Justice regarding classification of EpiPen devices for the Medicaid Drug Rebate program; criticism of Mylan by select legislators; state investigations related to the EpiPen4Schools® and drug rebate programs; and a Congressional hearing to "address concerns over Mylan" in response to consumer complaints about the price of EpiPen devices. *Id.* Notably absent from the Complaint, however, is any explanation of how any of these events relates to Plaintiffs or other consumers, or what they have to do with the claims Plaintiffs have attempted to plead. That omission is not surprising; no such connection exists. Plaintiffs simply include them to poison the well while declaring that Mylan is liable for engaging in "unfair methods of competition and unfair or deceptive acts or practices." *Id.* ¶ 96. Plaintiffs then claim that Mylan is liable for four distinct practices: "(A) misclassifying its EpiPen® products as generic drugs; (B) making material misrepresentations regarding its reasons for increasing the price of its EpiPen® products; (C) making material misrepresentations regarding the reason its EpiPen® products are sold only in two packs; and (D) exploiting its dominant market position to unreasonably increase the price of EpiPen® products." *Id.*; *see also id.* ¶¶ 110, 118, 124, 132; *cf. id.* ¶104.

Based on these allegations, Plaintiffs assert eight counts against Mylan under California and Massachusetts law: violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A ("Chapter 93A"); fraud by concealment; negligent misrepresentation; unjust enrichment; and a request for declaratory judgment that "Mylan must truthfully sell and market its EpiPen® products." *See id.* ¶¶ 88-144. Plaintiffs "seek declaratory and injunctive relief, and to recover drug payments and overpayments made from at least the year 2007 through the present." *Id.* at ¶ 6.

- 4 -

1

**LEGAL STANDARD**

2    To survive a motion to dismiss, a complaint must contain "more than an unadorned, the-

3  defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4  Merely offering "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

5  action will not do.'"  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

6  Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  *In re*

7  *Cal. Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009 WL 1458025, at *3 (N.D. Cal. May

8  21, 2009) (quoting *Twombly*, 550 U.S. at 570) (White, J.).   Plausibility does not mean

9  probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."

10  *Iqbal*, 556 U.S. at 678.   "Where a complaint pleads facts that are 'merely consistent with' a

11  defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement

12  to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557); *see In re Cal. Title*, 2009 WL 1458025, at * 6

13  (dismissing claims when facts as pled support "an equally plausible inference" that defendants

14  engaged in lawful conduct).  These factual allegations must be sufficient to "raise a right to relief

15  above the speculative level."  *Twombly*, 550 U.S. at 555.

16    In  addition,  claims  "sounding  in  fraud"  are  subject  to  the  heightened  pleading

17  requirements of Federal Rule of Civil Procedure 9(b).  *Williamson v. Reinalt-Thomas Corp.*, No.

18  5:11-CV-03548-LHK, 2012 WL 1438812, at *3 (N.D. Cal. Apr. 25, 2012); *see* Fed. R. Civ. P.

19  9(b) (Plaintiffs "must state with particularity the circumstances constituting fraud").  "Averments

20  of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct

21  charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).

22  Furthermore, Plaintiffs must "set forth what is false or misleading about a statement, and why it

23  is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see Biggins v. Well*

24  *Fargo & Co.*, 266 F.R.D. 399, 410 (N.D. Cal. 2009) (dismissing claims, *inter alia*, because

25  plaintiffs failed to "allege facts to show why [a] statement was false" and "general allegations

26

27

28

1    about material terms and conditions . . . are insufficient to satisfy Rule 9(b)'s requirements.")

2    (White, J.).[5]

3                                    **ARGUMENT**

4    **I.    PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS.**

5           "No principle is more fundamental to the judiciary's proper role in our system of

6    government than the constitutional limitation of federal-court jurisdiction to actual cases or

7    controversies," as defined by Article III of the Constitution.  *Consumer Fin. Prot. Bureau v.*

8    *Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818,

9    (1997).  To establish Article III standing, a plaintiff must demonstrate three elements:  "(1) an

10   injury in fact, (2) a sufficient causal connection between the injury and the conduct complained

11   of and (3) a likelihood that the injury will be redressed by a favorable decision."  *Munns v.*

12   *Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) (internal citations omitted); *Hollingsworth v. Perry*,

13   133 S. Ct. 2652, 2661 (2013) ("The presence of a disagreement, however sharp and acrimonious

14   it may be, is insufficient by itself to meet Art. III's requirements.") (citation omitted).

15          As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing each

16   of these elements and "must 'clearly . . . allege facts demonstrating' each element."  *Spokeo, Inc.*

17   *v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

18   Plaintiffs have not carried that burden here because they have not pled an injury sufficient to

19   establish Article III standing or the actual reliance required to establish statutory standing for

20   claims brought pursuant to the CLRA, FAL, and UCL.  Therefore, Plaintiffs' Complaint should

21   be dismissed pursuant to Rule 12(b)(1).

22

23

24   _____

     [5] Rule 9(b) applies to all claims that are "grounded in fraud," such as when plaintiffs "allege a
25   unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a
     claim."  *Vess,* 317 F.3d at 1103.  If the complaint contains claims that "do not rely entirely on a
26   unified fraudulent course of conduct," but does contain "particular averments of fraud [that] are
     insufficiently pled under Rule 9(b), a district court should disregard those averments, or strip
27   them from the claim" and then "examine the allegations that remain to determine whether they
     state a claim."  *Id.* at 1105-06.

28

### A.     Plaintiffs Have Not Pled Constitutional Standing.

Plaintiffs have not pled the "'[f]irst and foremost' of standing's three elements":  injury in fact.  *Spokeo*, 136 S. Ct. at 1547 (citation omitted).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual and imminent,' not 'conjectural' or 'hypothetical.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted).

As a threshold matter, Plaintiffs have not even alleged, let alone pled facts to support, *any* concrete or particularized injury.  Plaintiffs' Complaint contains three sentences of allegations actually relating to their personal experiences, which read as follows:

- "Plaintiffs Kimberly Corcoran and Todd Beaulieu must buy EpiPen®s to protect themselves and/or their children from anaphylactic shock and, because they expire, must be purchased every year."  Compl. ¶ 5.

- "Plaintiff Kimberly Corcoran has had to purchase EpiPen® products for her minor son since 2011, following a diagnosis of a peanut allergy shortly before his second birthday; an allergy which he will likely not outgrow and will require a prescription emergency treatment option for the duration of his life.  Plaintiff Corcoran is required to purchase and maintain six pens at all times: two at school, two at home, and two at daycare."  *Id.* ¶ 78.

- "Plaintiff Todd Beaulieu has been purchasing EpiPen®s for more than ten years, and actually began purchasing EpiPen® products prior to Mylan's acquisition of the product line.  Mr. Beaulieu requires the use of an epinephrine auto-injector due to his severe allergy to insect venom.  As a result he is required to store six to eight pens at all times – including two at his workplace, two at home, and two in his car. Mr. Beaulieu also stores expired pens in order to meet this requirement. The cost to Mr. Beaulieu has varied significantly over the years, but has ranged from $15.00 for a single-pack to close to $300.00 out of pocket, after insurance."  *Id.* ¶ 79.

That is all.  Corcoran does not indicate whether she paid out of pocket or whether insurance covered some or all of the prescription, as is usually the case, nor does she allege what prices she paid, or if she paid at all.  Beaulieu alleges only that he has paid approximately $300 out of pocket for a two-pack of EpiPen devices.  Neither alleges what a "fair and reasonable" retail price should be or when a reasonable out of pocket expenditure becomes unreasonable.

And, most importantly, neither Plaintiff alleges how the mere "purchase" of EpiPen Auto-Injectors, standing alone, results in an actionable wrong.  The Complaint alleges harm only in general and conclusory paragraphs for each count.  For example, the CLRA count declares

- 7 -

that Plaintiff Corcoran "suffered injury in fact and actual damages . . . because [she] paid an inflated price for EpiPen® products."  Compl. ¶ 97.  Similarly, the Chapter 93A count declares that Plaintiff Beaulieu suffered "the loss of money from purchasing Mylan's EpiPen® products at an inflated price."  *Id.* ¶ 121.  The remaining counts are no different.[6]

The problem with this approach is simple:  consumers do not suffer legally cognizable injury every time they pay more than they would like for a specific good, or more than what they deem would provide a "reasonable" profit to the seller.  For consumers, "in order to have standing to bring claims asserting an economic injury-in-fact under Article III, courts have found that plaintiffs must demonstrate *they were deceived, and either paid a premium for the product or would have purchased an alternative product*."  *Estrada v. Johnson & Johnson*, No. 2:14-CV-01051-TLN, 2015 WL 1440466, at *2 (E.D. Cal. Mar. 27, 2015) (emphasis added); *cf. Pirozzi v. Apple Inc.*, 913 F.Supp.2d 840, 846–47 (N.D. Cal. 2012) ("Overpaying for goods or purchasing goods a person *otherwise would not have purchased* based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing.") (emphasis added).  If a plaintiff "receive[s] the benefit-of-the-bargain because the product performed as promised," then the plaintiff "does not have an injury to satisfy Article III standing."  *Estrada*, 2015 WL 1440466, at *3 (citing *Myers–Armstrong v. Actavis Totowa*, LLC, No. C 08–04741 WHA, 2009 WL 1082026, at *3–4 (N.D. Cal. Apr. 22, 2009) *aff'd*, 382 F. App'x 545 (9th Cir. 2010).

Indeed, pricing claims are cognizable when the alleged injury is based on paying a premium for a product based on claims that it possesses a certain attribute or quality, when in fact it does not, or when the consumer receives a product that is different from what was

---

[6] *See id.* ¶ 111-12 (UCL claim alleges injury due to "inflated prices"); *id.* ¶ 128 (fraud claim alleges "damage" due to "inflated prices"); *id.* ¶ 134 (negligent misrepresentation claim alleges Plaintiffs were "induced" to pay "inflated price[s]"); *id.* ¶ 137 (unjust enrichment claim alleges Mylan has "retained the inflated prices paid by Plaintiffs"); *id.* ¶ 142 (declaratory judgment is appropriate to force a "fair and reasonable price"); *cf. id.* ¶ 104 (FAL claim alleges harm generally as a result of Mylan's "unfair, unlawful, and deceptive practices" as a result of "misrepresentations and/or omissions . . .with respect to the design, cost, and efficacy" of the products).

promised.  *See, e.g.*, *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same:  the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately.").  For example, this Court has found that plaintiffs have standing to bring claims when they purchased food products because of allegedly deceptive labeling.  *See, e.g.*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011) (White, J.), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).  In those circumstances, the product the consumer purchased was different from the product the consumer thought they were purchasing and thus could give rise to economic harm, i.e., the difference in value between what the consumer paid (thinking the product was something other than it was) and what the product was actually worth.  *See id.* at *2 ("Because Plaintiff alleges that the Drumstick products cost more than similar products without the alleged misrepresentations, the SAC sufficiently alleges some economic injury to satisfy the loss of money or property requirement for standing under the UCL, FAL and CLRA.").

But that is not this case.  Plaintiffs paid for a two-pack of EpiPen devices, and received exactly what they paid for:  a two-pack of EpiPen devices.  Plaintiffs have not plausibly pled that they were deceived about some misrepresented quality or feature, or that, absent some misrepresentation regarding EpiPen devices, they would have purchased no such epinephrine auto-injector or another brand of auto-injector instead.  *See* Compl. ¶¶ 124, 132 (Plaintiffs' conclusory allegations that Mylan "concealed and suppressed material facts concerning the quality and efficacy of EpiPen® products" do not specify what facts were concealed or allege anything in particular regarding the devices' quality or efficacy).  All they allege is that the price was too high, which is not enough to confer standing.  To hold that a consumer suffers injury-in-fact whenever they pay (or even overpay) for a product for which they knew the price and received the product they paid for would render every business liable to consumers who decide, after the fact, that they would have preferred to acquire the product or service for less.  That cannot be, and is not, the law.  Defendants are not aware of any authority for the proposition that

- 9 -

1   a consumer has suffered an economic injury-in-fact merely because they have paid too much (in

2   their opinion) for a product that was accurately marketed and performed as promised.  Paying

3   more than one thinks a product should cost is insufficient to give rise to an economic injury

4   sufficient to satisfy Article III.

5           Likewise, Plaintiffs' allegation that Mylan's "profits came at the expense of allergy

6   sufferers," is nothing more than a basic truism of commerce:  any seller's profits are obtained "at

7   the expense of" the consumers who purchase their products (and/or any third parties that may

8   have paid for them in whole or in part).  Compl. ¶ 38.  Plaintiffs have not alleged that the EpiPen

9   devices they purchased were anything other than exactly what they intended to purchase, that

10  they purchased those devices based on misleading promises about the properties of the device, or

11  that the devices do not work as intended.  To the contrary, Plaintiffs received the benefit of their

12  bargain:  exactly what they were promised, for the price they were promised.  They merely wish

13  that the price they paid had been different.[7]

14          Because Plaintiffs have alleged *no* injuries whatsoever—much less injuries that meet the

15  requirements of Article III—and because they cannot do so, their Complaint should be

16  dismissed.[8]

17      **B.      Plaintiffs Have Not Pled Statutory Standing for their California Consumer
                  Protection Claims.**

18          Plaintiffs also have not met the standing requirements for their statutory claims under

19  California law.  In order to have statutory standing to assert CLRA, FAL, and UCL claims, the

20  only California plaintiff in the case—Plaintiff Corcoran—must allege that she lost money or

21  property as a result of her own actual and reasonable reliance on the challenged conduct.  *See*

22

---

23  [7]  Plaintiffs' repeated assertions that Mylan "exploit[ed] its dominant market position to
     unreasonably increase" prices also do not supply an actionable injury that would support
24  standing to pursue their claims.  Indeed, the only "exploitation" Plaintiffs identify is that Mylan
     engaged in routine business practices like "marketing, lobbying, and branding efforts."  Compl.
25  ¶34.  And they do not tie those efforts to any deception that caused Plaintiffs to pay more for
     their EpiPen devices than they otherwise should.  "As a general rule, businesses are free to
26  choose the parties with whom they will deal, as well as the prices, terms, and conditions of that
     dealing."  *Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009).

27  [8]  Furthermore, and for all of the reasons stated below in Section VI, Plaintiffs have failed to
     plead causation as required to establish Article III standing.

28

NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05983-JSW

*Williamson,* 2012 WL 1438812, *8 ("To establish standing as a class representative for a misrepresentation claim under the FAL or CLRA, a plaintiff must show he personally lost money or property because of his own actual and reasonable reliance on the allegedly untrue or misleading statements."); *see also Moran v. Prime Healthcare Mgmt., Inc.*, 208 Cal. Rptr. 3d 303, 310 (Cal. Ct. App. 2016) ("[T]o maintain a private enforcement action under the UCL, a plaintiff must be 'a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.'") (quoting Cal. Bus. & Prof. Code § 17204); *Kwikset Corp.*, 51 Cal. 4th at 326 (standing under the UCL, FAL, and CLRA "requires a showing of a causal connection or reliance on the alleged misrepresentation.") (internal quotation omitted). "To plead actual reliance, the 'plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct.'" *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-CV-04291-SI, 2016 WL 4382544, at *3 (N.D. Cal. Aug. 17, 2016) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)).

Here, Plaintiff Corcoran does not allege reliance on any misrepresentation or omissions attributable to Mylan, or to any other entity. *See* Compl. ¶¶ 88-114. Plaintiff Corcoran makes clear that she has purchased EpiPen devices so that she is prepared to treat her family's allergic reactions. See *id.* ¶ 78; *see also id.* ¶ 5. She does not allege, however, that her decision to purchase EpiPen devices (as opposed to some other epinephrine auto-injector or no device at all) was in any way based on or related to the alleged misrepresentations and omissions set forth in the Complaint. Indeed, Plaintiff Corcoran does not even allege that she was exposed to any particular misrepresentation or that some omission influenced her behavior. Generalized and conclusory allegations like those in the Complaint, *see, e.g.*, *id.* ¶¶ 103, 113, are neither plausible nor particular enough to establish actual reliance. *See Vess*, 317 F.3d at 1106.

Plaintiff Corcoran does not allege any change in her own (or any other consumer's) behavior as a result of any statement, omission, or other action undertaken by Mylan. As such, Plaintiff Corcoran's claims pursuant to the CLRA, FAL, and UCL should be dismissed.

## II.  PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL PATENT LAW.

Plaintiffs' Complaint should be dismissed for the additional reason that all of Plaintiffs' claims seek to use state law to challenge Mylan's pricing of the EpiPen Auto-Injector, a patented pharmaceutical product, and thus are preempted by federal patent law.

It is well-established that state law must yield to congressional enactments when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Biotech. Indus. Org. v. Dist. of Columbia*, 496 F.3d 1362, 1372 (Fed. Cir. 2007) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) ("*Biotech*").  In the context at issue here, courts also have "long acknowledged the importance of the patent system in encouraging innovation.  Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) (internal quotations and citations omitted).  As a result, the Federal Circuit has specifically recognized that Congress is "the promulgator of patent policy," and that federal patent law reflects the results of Congress's deliberations regarding "the proper balance between innovators' profit and consumer access to medication." *Biotech*, 496 F.3d at 1373-74.

For this reason, courts have repeatedly held that state law claims challenging the pricing of patented pharmaceutical products are preempted by federal patent law.  The decision last year in *Southeastern Pennsylvania Transportation Authority v. Gilead Sciences, Inc.* ("*SEPTA*"), 102 F. Supp. 3d 688 (E.D. Pa. 2015), is instructive.  In that case, the court held that certain state law claims—including claims pursuant to the "unfair" and "unlawful" prongs of the UCL—brought against a pharmaceutical manufacturer for allegedly excessive drug pricing were preempted by federal patent law.  *Id.*  The *SEPTA* plaintiffs alleged that the defendant had violated California law by charging excessive prices for two patented drugs.  *Id.* at 695-696.  But the court held that the plaintiffs' claims were preempted by federal law to the extent they sought "to use state law to challenge Gilead's exercise of its exclusive patent rights to make pricing decisions." *Id.* at 703.

Likewise, in *Biotech*, the Federal Circuit determined that a District of Columbia statute regulating the cost of patented drugs was preempted by federal patent law.  The court reasoned

- 12 -

1    that the "underlying determination about the proper balance between innovators' profit and

2    consumer access to medication . . . is exclusively one for Congress to make. . . . [W]here it is

3    clear how the patent laws strike that balance in a particular circumstance, that is not a judgment

4    the States may second-guess." *Biotech*, 496 F.3d at 1374 (citing *Bonito Boats, Inc. v. Thunder*

5    *Craft Boats Inc.*, 489 U.S. 141, 152 (1989)) (internal quotations omitted).

6            Here, Plaintiffs are attempting to use state law to challenge Mylan's pricing decisions

7    regarding patented EpiPen devices, which Mylan has the exclusive right to market, distribute,

8    and sell.  Plaintiffs assert that Mylan has an "obligation" to "offer [EpiPen] products at a fair and

9    reasonable price," Compl. ¶ 142, and each claim in the Complaint is based on allegedly "unfair,

10   exorbitant, and unconscionable price increases" for EpiPen devices, *id.* ¶ 6.  Indeed, the only

11   injury alleged in the Complaint is that Plaintiffs paid an "inflated price." *Id.* ¶ 97; *see also* ¶¶

12   111, 121, 128, 134, 137; *cf. id.* ¶¶ 105-06.  As in *SEPTA*, however, Plaintiff cannot use state law

13   to address Mylan's pricing decisions related to patented pharmaceutical products, to force Mylan

14   to lower those prices, or to disgorge profits from the sale of those devices.  That is the exclusive

15   province of congressional decisions inherent in federal patent law.   *Biotech*, 496 F.3d at 1374.

16   Accordingly, all of Plaintiffs' claims conflict with—and are preempted by—federal patent law

17   and should be dismissed.

18   **III.    PLAINTIFFS FAIL TO STATE A CLAIM BASED ON DECEPTIVE CONDUCT
            (COUNTS I-VI).**

19

20           Another fundamental problem with Plaintiffs' complaint is that it does not allege any

21   deceptive conduct that could support liability as a matter of law.  Plaintiffs rely on Mylan's

     alleged "unlawful scheme involving unfair, exorbitant, and unconscionable price increases,"
22

     Compl. ¶ 6, to assert six causes of action based on "deceptive" or "misleading" conduct. *See id.*
23

24   ¶ 96-97 (CLRA); *id.* ¶ 103 (FAL); *id.* ¶¶ 109-10 (UCL); *id.* ¶ 118 (Chapter 93A); *id.* ¶¶ 124-25

25   (fraud); *id.* ¶¶ 132, 134 (negligent misrepresentation).[9]  To support these claims, Plaintiffs point

26   ───────────────
     [9]  Each of these claims shares common elements:  all require that Plaintiffs identify the
27   challenged misrepresentation or omission; the California statutory claims require Plaintiffs to
     allege that a reasonable person was likely to be deceived by the challenged misrepresentation or
28   omission; the Chapter 93A claim requires Plaintiffs to allege a reasonable causal connection

1    to two categories of supposed "misrepresentations concerning the quality and efficacy" of

2    EpiPen devices:  (1) "material misrepresentations regarding [Mylan's] reasons for increasing the

3    price of its EpiPen products" and (2) "material misrepresentations regarding the reason

4    [Mylan's] EpiPen products are sold only in two packs."  *Id.* ¶ 96 (CLRA); *see also id.* ¶ 110

5    (UCL); *id.* ¶ 118 (Chapter 93A); *id.* ¶ 124 (fraud); *id.* ¶ 132 (negligent misrepresentation); *cf. id.*

6    ¶ 104 (FAL claim based on "misrepresentations and/or omissions . . . with respect to the design,

7    cost, and efficacy of Defendants' EpiPen products.").     But all of Plaintiffs' deception-based

8    claims fail for the same reasons: the Complaint does not allege a single actionable

9    misrepresentation or omission, or how Plaintiffs—or any reasonable consumer—could possibly

10   have been deceived by the conduct alleged in the Complaint.  Moreover, Plaintiffs' fraud-based

11   claims fail to meet the heightened pleading standard of Rule 9(b), and should be dismissed on

12   that independent basis.[10]

13

14

---

15   between the deceptive act and the consumer's injury; and the common law claims require
     Plaintiffs to plead justifiable reliance.  *See Fisher v. Monster Beverage Corp.*, No. 13-57094,
16   2016 WL 3645098, at *1 (9th Cir. July 8, 2016) (CLRA, FAL, and UCL claims require Plaintiff
     to plead a representation that "was false or likely to mislead a reasonable consumer") (citation
17   omitted); *S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*, No. CV 12-11663-
     GAO, 2016 WL 1732720, at *15 (D. Mass. Apr. 28, 2016) (Chapter 93A claims for practices that
18   "could reasonably be found to have caused a person to act differently from the way he or she
     otherwise would have acted" require, "at a minimum, a showing of (1) a deceptive act or practice
19   on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal
     connection between the seller's deceptive act or practice and the consumer's injury.") (internal
20   quotations and citations omitted); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 857–58
     (N.D. Cal. 2012) (fraud requires showing of a "false representation of a material fact" and
21   "justifiable reliance . . . resulting in damages"); *Eureka Broadband Corp. v. Wentworth Leasing
     Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (same); *Williamson*, 2012 WL 1438812, at *13 ("The
22   elements of a cause of action for negligent misrepresentation are the same as those of a claim for
     intentional misrepresentation, with the exception that the defendant need not actually know the
23   representation is false."); *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 63 (2004)
     (same).

24   [10] Claims for both fraud and negligent misrepresentation are subject to Rule 9(b), as are claims
25   pursuant to the CLRA, FAL, UCL, and Chapter 93A that rely on deceptive or misleading
     conduct.  *See, e.g.*, *Kearns*, 567 F.3d at 1124 ; *Vess*, 317 F.3d at 1103-04; *Elias v. Hewlett-
26   Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012); *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d
     40, 46 (D. Mass. 2015); *Martin v. Mead Johnson Nutrition Co.*, No. 09-11609-NMG, 2010 WL
27   3928707, at *3 (D. Mass. Sept. 30, 2010) ("A claim under Chapter 93A that involves fraud is
     subject to the heightened pleading requirement.").

28

NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
CASE NO. 4:16-CV-05983-JSW

### A. Plaintiffs Have Not Pled Any Actionable Misrepresentations or Omissions Related to Price Increases.

Plaintiffs wrongly try to cast their challenge to Mylan's pricing practices as deception-based claims, alleging that Defendants somehow misrepresented the "design, cost, or efficacy" of EpiPen products by misrepresenting its "reasons for increasing the price of EpiPen products." *See, e.g.*, Compl. ¶¶ 96, 104. This attempt at creative pleading does not obscure the fact that Plaintiffs did not bring this lawsuit because of any misrepresentation by Mylan about how or why it set prices for the EpiPen product; they brought their claims because of the price increases themselves. *See, e.g.*, Compl. ¶ 6 ("Plaintiffs seek declaratory and injunctive relief, and to recover drug payments and . . . as a result of Defendants' unlawful scheme involving unfair, exorbitant, and unconscionable price increases."). And price increases, on their own, are not deceptive in any way. *See* Section III.A *supra* at 13.

Plaintiffs fail to identify any statements that could plausibly mislead a reasonable consumer. The only allegation that conceivably bears on why Mylan increased prices is that the company "invested 'more than one billion dollars' in the EpiPen® product 'to enhance the product and make it more available.'" Compl. ¶ 74; *see also id.* ¶¶ 76-77 (listing "improvements" to the product). Plaintiffs do not dispute that Mylan did, in fact, make changes to "enhance" the products, nor do they dispute that Mylan did, in fact, make EpiPen devices "more available." Instead, Plaintiffs allege that these expenditures and improvements are not an acceptable "justification" for price increases—in effect, they claim that Mylan's after-the-fact explanation for past price increases is misleading solely because they do not agree with the current price. *See id.* ¶ 75.

This logic reflects the flaw at the heart of the Complaint: Plaintiffs are challenging the *price* of EpiPen devices, not any misrepresentations about the products' marketing, design, or efficacy. At bottom, Plaintiffs cannot overcome the fact that there is no cognizable legal theory based on a consumer's dissatisfaction with the price of a product, especially where (as here) they knew the price and the nature of the product before they paid for it, and got exactly what they paid for.

**B.      Plaintiffs Have Not Pled Any Actionable Misrepresentations or Omissions Related to Packaging.**

In support of their claims that Mylan made "material misrepresentations regarding the reason its EpiPen products are sold only in two packs," Plaintiffs fail to identify any specific misrepresentation, let alone one that affected consumer behavior.  Plaintiffs point to Mylan's statement in a press release that the "decision to exclusively offer the EpiPen 2-Pak®, which contains two single EpiPen® Auto-Injectors, aligns with [recent NIAID] guidelines," as well as "2011 World Allergy Organization (WAO) anaphylaxis guidelines which recommend that physicians consider prescribing more than one epinephrine auto-injector."  Compl. ¶ 46.  Yet Plaintiffs do not specify how these statements are misleading or false, or what facts Mylan omitted that could possibly make the statements deceptive.  In fact, they cannot do so.   Mylan's statement that the decision to package EpiPen devices in sets of two aligned with the NIAID and WAO Guidelines is completely accurate.  *Compare id.* ¶ 46, *with* Ex. A [NIAID Guidelines], Ex. B [WAO Guidelines], and Ex. C [Press Release].[11]

The press release simply does not contain any deceptive or materially misleading statements.  For example, the press release relies on a recommendation that patients "have immediate access to two doses of epinephrine."  Ex. C at 1; Compl. ¶ 46.  The NIAID guidelines expressly recommend that a patient who has experienced anaphylaxis should be prescribed two doses of epinephrine.  *See* Ex. A §§ 6.4.2 ("All patients who have experienced anaphylaxis should be sent home with . . . Epinephrine auto-injector (2 doses).").  And the same is true of every other statement in the Press Release as well.  *See* Ex. C; *compare* Ex. C [Press Release] (WAO guidelines "recommend that physicians consider prescribing more than one epinephrine

---

[11]    These documents are publicly available at https://www.niaid.nih.gov/diseases-conditions/guidelines-clinicians-and-patients-food-allergy (last visited Dec. 15, 2016); http://www.worldallergy.org/anaphylaxis/ (last visited Dec. 15, 2016); and http://newsroom.mylan.com/press-releases?item=123046 (last visited Dec. 15, 2016).  The Court may properly consider the NIAID and WAO guidelines and the press release pursuant to Rule 12(b)(6), because the press release is quoted and the guidelines are referenced in and integral to the allegations asserted in the Complaint.  *See Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 978 (N.D. Cal. 2012) (White, J.) ("Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

1  auto-injector"), *with* Ex. B at 18 ("consider prescribing more than one epinephrine auto-
2  injector") [WAO guidelines]. Plaintiffs' only critique is that another organization concluded that
3  "only a small number of patients require a second dose" of epinephrine, Compl. ¶ 47, but an
4  alleged disagreement among experts does not transform an accurate description of the cited
5  health guidelines into a misrepresentation.

6  **C.    Plaintiffs Have Not Identified Any Other Relevant Deceptive Conduct.**

7          The other allegedly deceptive practices identified in the Complaint have no relevance to
8  Plaintiffs' claims or are not plausibly deceptive, much less pled with the necessary particularity.
9  For example, the Complaint alleges that Mylan misrepresented the classification of EpiPen
10 products to the government. *Compare* Compl. ¶¶ 49-55, *with id.* ¶¶ 96, 110, 118, 124, 132. The
11 Complaint gives no indication (nor could it) of how this supposed misrepresentation could have
12 had any impact on Plaintiffs.[12]   Likewise, Plaintiffs' other claims are nonsensical—asserting that
13 Mylan somehow "concealed and suppressed material facts concerning the quality and efficacy"
14 of EpiPen products by "exploit[ing] its dominant market position to unreasonably increase the
15 price of EpiPen products." *Id.* ¶¶ 124, 132. Plaintiffs do not identify the "material facts" they
16 have in mind, nor do they allege how Mylan supposedly "suppressed" or "concealed" them.
17 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
18 statements do not suffice," much less meet the heightened pleading standard required by Rule
19 9(b). *Ashcroft*, 556 U.S. at 678; *see Biggins*, 266 F.R.D. at 410 ("[G]eneral allegations about
20 material terms and conditions . . . are insufficient to satisfy Rule 9(b)'s requirements."). The
21 Complaint does not allege any facts to support the allegation that Mylan represented that EpiPen
22 products have "uses, and benefits which they do not have" or "are of a particular standard,
23 quality, or grade, if they are of another," Compl. ¶ 95, or that Mylan ever misrepresented the

24 ---

25 [12] The supposed misrepresentation that Plaintiffs reference involved Mylan's classification of its
   EpiPen products for purposes of paying rebates to federal and state governments under the
26 Medicaid Drug Rebate Program. *See* Form 8-K dated October 7, 2016, *available at*
   http://investor.mylan.com/secfiling.cfm?filingID=1193125-16-733889&CIK=1623613     (last
27 visited December 14, 2016). Plaintiffs do not allege they are Medicaid recipients, and even if
   they were, this issue is not consumer-facing and could not have affected Plaintiffs in any way. It
   is an issue, if at all, between Mylan and the governmental entities to whom rebates are paid.

28

"efficacy" or "quality" of EpiPen devices, *id.* ¶¶ 104, 124.  As with the allegedly deceptive statements discussed above, Plaintiffs have failed to plausibly and particularly allege that any of these representations or practices could mislead a reasonable consumer—or even how they conceivably could.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM BASED ON "UNFAIR" CONDUCT (COUNTS III AND IV).

The California UCL and the Massachusetts' Chapter 93A both prohibit "unfair" conduct, but neither statute defines the term "unfair."  *See* Cal. Bus. & Prof. Code § 17200; Mass. Gen. Laws. Ch. 93A, § 2.  Courts have developed various tests under California and Massachusetts law.  Regardless of which standard applies, however, the result is the same:  Plaintiffs have failed to allege actionable "unfair" behavior, and these claims should be dismissed.

Courts in California have employed two relevant tests to determine whether conduct is "unfair" under the UCL.  The *South Bay* test requires courts to examine the allegedly unfair practice's "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer."  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 886 (1999)).  The *Cel-Tech* test requires that "any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Davis*, 691 F.3d at 1169-70 (quoting *Cel-Tech Commc'ns., Inc. v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999)).  Although there is no clear consensus on which test applies to consumer actions such as this, as opposed to actions brought by competitors, this Court does not need to decide that issue because Plaintiffs' allegations fail to satisfy either test.  *See, e.g.*, *Davis*, 691 F.3d at 170; *Williamson* 2012 WL 1438812, at *11 ("Despite the split in authority as to which test applies, Plaintiff has failed to meet the unfair prong under either test.").[13]

---

[13] Some California courts have applied a third test, based on the three-pronged inquiry contained in the Federal Trade Commission Act, 15 U.S.C. § 45(a).  However, the Ninth Circuit has "decline[d] to apply the FTC standard in the absence of a clear holding from the California Supreme Court." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007); *see also Williamson*, 2012 WL 1438812, at *11.  For the reasons discussed, application of the FTC test would not produce different results in any event.

1     For purposes of Massachusetts law, Chapter 93A prohibits unfair conduct that falls
2 "within the penumbra of some common-law, statutory, or other established concept of
3 unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to
4 other businessmen." *Gould v. Bank of N.Y. Mellon*, 123 F. Supp. 3d 197, 205 (D. Mass. 2015)
5 (quoting *Linkage Corp. v. Trs. of Boston Univ.*, 425 Mass. 1, 27, 679 N.E.2d 191 (1997)).  "The
6 'crucial factors' in an unfairness inquiry are 'the nature of [the] challenged conduct and . . . the
7 purpose and effect of that conduct.'"  *In re Pharm. Indus. Average Wholesale Price Litig.*, 582
8 F.3d 156, 184 (1st Cir. 2009) (quoting *Mass. Employers Ins. Exch. v. Propac–Mass, Inc.*, 420
9 Mass. 39, 42 (1995)).  For a number of reasons, Plaintiffs fail this test too.

10     Here, Plaintiffs allege that Mylan's pricing decisions are "unfair" under the UCL and
11 Chapter 93A because they are "inflated" above some undefined lower price that Plaintiffs
12 believe would be more appropriate.  In support of this claim, Plaintiffs vaguely reference "unfair
13 marketing and lobbying" practices designed to increase knowledge of and access to EpiPen
14 products, which they claim gave Mylan a "dominant market position" and allowed it to raise
15 prices.  Compl. ¶ 34; *see id.* ¶¶ 30-33.  Plaintiffs also reference Mylan's decision to sell EpiPen
16 devices in two-packs, which "forced [Plaintiffs] to pay more for the two pack product, regardless
17 of whether two pens were needed or not."  *Id.* ¶ 45.  These allegations are nothing more than a
18 catalogue of routine business practices.

19     Simply put, there is nothing unfair that gives rise to a legal cause of action when a
20 company charges more for a particular product than some consumers would prefer.  Plaintiffs
21 need to plead something more than "labels and conclusions," but they plainly do not.  *Twombly*,
22 550 U.S. at 555.  The Complaint fails to identify *any* kind of "immoral, unethical, oppressive,
23 unscrupulous" or coercive behavior, *Gould*, 123 F. Supp. 3d at 205 (quotation omitted), or any
24 other factor that could make Mylan's conduct "unfair" for purposes of stating a claim under the
25 UCL or Chapter 93A.

26     In fact, the Complaint identifies no rule or standard that could serve as a guide other than
27 the unsupported claim that Mylan is obligated to "offer [EpiPen] products at a fair and
28 reasonable price."  Compl. ¶¶ 142-43; *see SEPTA*, 102 F. Supp. 3d at 707-08 (dismissing Section

UCL claim predicated on "unfair" too-high prices because, *inter alia*, plaintiffs "propose[d] several theories of advancing the public [welfare] that they believe oblige [defendant] to charge less for its drugs, but plaintiffs fail[ed] to tether those theories to any rule").  Indeed, the Complaint does not identify any public policy, standard of conduct, or guideline for how this Court is to determine whether a price—freely set by a company and in violation of no laws or regulations—is "unfair."

Nor are Plaintiffs' generalized allegations of some sort of anti-competitive behavior sufficient.  *See, e.g.*, Compl. ¶ 96.  The Complaint contains no allegations of anti-competitive behavior in violation of federal antitrust law or any state statute, nor does it explain how Mylan has supposedly "exploited" its position.  *See id.* ¶ 119 (alleging generally and without factual support that Mylan "engaged in unfair and unscrupulous practices by raising the price of life-saving medication without justification and limiting patient access to alternatives resulting in substantial harm.").  There is nothing illegal or unfair about Mylan having achieved success by marketing a product that is proven to save lives, and the allegations in the Complaint do nothing to suggest otherwise.

Plaintiffs have failed to allege facts to support their claim that Mylan's pricing decisions are "unfair" pursuant to the UCL and Chapter 93A.  Thus, these claims should be dismissed.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM BASED ON UNLAWFUL CONDUCT (COUNT III).

The "unlawful" prong of Section 17200 "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech*, 20 Cal. 4th at 180; *Moran v. Prime Healthcare Mgmt.*, Inc., 208 Cal. Rptr. 3d 303, 311 (Cal. App. 2016) ("[V]iolation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.").  Plaintiffs do not specify which specific violation of another law supports their UCL claims for "unlawful" behavior, *see* Compl ¶¶ 110-11, but the claim would fail regardless:  all of Plaintiffs' other claims, and thus all of their potential predicate offenses under this prong of the UCL, fail for the reasons set forth above.  As such, their UCL "unlawful" claim should be dismissed.  *See Davis*, 691 F.3d at 1168-69.

- 20 -

**VI.   PLAINTIFFS HAVE NOT PLED THAT MYLAN CAUSED THEIR ALLEGED INJURIES (COUNTS I-VI).**

Plaintiffs have also failed to plead a "causal connection between the injury and the conduct complained of." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008). It is black-letter law that an alleged injury "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quoting *Lujan,* 504 U.S. at 560–61).[14] Plaintiffs fail to satisfy this requirement for three reasons.

First, Plaintiffs have not identified any connection between Mylan's alleged misrepresentations and omissions and the supposed harm of paying "inflated prices." Instead, they baldly assert that they "have suffered injury in fact and actual damages resulting from [Mylan's] material omissions and misrepresentations because they paid an inflated price for EpiPen products." Compl. ¶ 97. Such conclusory assertions do not come close to adequately pleading causation.

In fact, the allegations in the Complaint make clear that Plaintiffs *cannot* plead causation. For example, Plaintiffs do not allege that they were harmed by Mylan's allegedly "improper" classification of the device to the Centers for Medicare and Medicaid Services, nor could they: such a classification has nothing to do with transactions involving private consumers like Plaintiffs; it relates to rebates for government Medicaid purchases of drugs. *See id.* ¶¶ 49-55. Similarly, Plaintiffs have not pled any connection between the testimony of any Mylan executive before Congress and the price they pay for EpiPen devices (nor could they). *See id.* ¶¶ 70-74;

---

[14] Plaintiffs must plead some form of plausible causation to establish liability for each of their claims. *See* Section III *supra* at 13 n.9 (claims require Plaintiffs to plead that a reasonable person was likely to be deceived by the challenged statements, a reasonable causal connection between the deceptive act and the consumer's injury, or Plaintiffs' justifiable reliance on the statements); *see, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1110-12 (N.D. Cal. 2016) ("Both [California law, the CLRA, and Massachusetts law, Chapter 93A Section 9] require a causal connection between the alleged misrepresentation and Plaintiff's actions which result in a loss."); *Williamson*, 2012 WL 1438812, at *8 (FAL and CLRA require plaintiff to "show that the misrepresentation was an immediate cause of the injury-producing conduct.") (quoting *Kwikset Corp.*, 51 Cal.4th at 326-27).

1  *see also id.*  ¶¶ 75-77 (no connection between statements regarding improvements to the devices
2  and alleged injuries).

3       Plaintiffs' bare allegations that they "would not have acted as they did with respect to
4  Defendants' excessive prices if they had known of the concealed and/or suppressed facts,"
5  Compl. ¶ 127, are plainly insufficient to satisfy Rule 9(b) because Plaintiffs do not identify a
6  single concealed or suppressed fact, or how such a fact would have changed their behavior.
7  Indeed, Plaintiffs nowhere allege *how* these allegedly material facts influenced their conduct or
8  how they would have acted differently.  *See also id.* ¶ 120 ("Mylan's conduct was deceptive
9  because it caused Plaintiffs and the Massachusetts members of the Class to act differently from
10  the way they would have otherwise acted.").

11       Second, Plaintiffs fail to plead that Mylan, rather than another independent actor, caused
12  their alleged injuries.  The Complaint does not detail where, or under what circumstances, either
13  of the Plaintiffs purchased their EpiPen devices, but it is indisputable that neither purchased them
14  directly from Mylan.  As Plaintiffs apparently recognize, there are a variety of wholesalers,
15  distributors, and retailers in the distribution chain between Mylan and Plaintiffs whose practices
16  and pricing decisions are their own—and the decisions and conduct of those intermediaries
17  determine the prices paid by patients.  *See id.* ¶ 11 ("Some insurance plans cover EpiPens and
18  some do not, but even when insurance covers the EpiPen, patients are often required to pay a
19  substantial portion of the $600 price tag.").  Simply put, Mylan does not set the ultimate retail
20  price paid by consumers such as Plaintiffs.  Thus, the Complaint does not (and cannot) allege
21  that *Mylan* caused Plaintiffs to pay whatever "inflated price" they claim to have paid.

22       Third, to the extent Plaintiffs claim to be harmed by the decision to sell EpiPen devices in
23  two-packs, that does not and cannot cause anyone harm, even indirectly.  *See* Compl. ¶¶ 44-47.
24  If Plaintiffs do not use both EpiPen devices in the package, that is not the result of Mylan's
25  decision to package the product in a certain way, much less the statements explaining that
26  decision.  It is instead the result of Plaintiffs being fortunate enough not to have suffered an
27  allergic reaction that caused them to need both of the EpiPen devices that they purchased.
28  Indeed, Plaintiffs appear to acknowledge the importance of having multiple devices:   both

Corcoran and Beaulieu keep two devices in each location where they might need them, rather than splitting two-packs across locations, and Beaulieu indicates that he has been doing so since before Mylan began to distribute EpiPen products in two-packs. *See id.* ¶¶ 78-79. Plaintiffs claim that consumers are "forced to pay more for the two pack product, regardless of whether two pens were needed or not," *id.* ¶ 45, but the causal link between that purchase and the alleged harm—having more pens than are needed in any given circumstance—is due to independent factors such as the severity of the person's medical reaction, the allergen to which they are exposed, whether a third party served them food when told not to, or even whether they happened to get stung by an insect that triggered a more severe attack. Hopefully, Plaintiffs are lucky enough not to need any of their EpiPen devices, but regardless, whether they do or not cannot "be fairly traceable to the challenged action" in this Complaint.

Furthermore, and for the same reasons discussed above with respect to Mylan's statements regarding price increases, Plaintiffs do not allege how Mylan's statement regarding the potential need for two devices could have caused them any harm. They do not claim to have seen the statements, acted upon them, or had their purchasing decisions influenced by them in any way.

## VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT VII).

To state a claim for unjust enrichment under either California or Massachusetts law, a plaintiff "must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).[15] Here, Plaintiffs allege that "Mylan has voluntarily accepted and retained the inflated prices paid

---

[15] Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action. *ESG Capital Partners*, 828 F.3d at 1038 (collecting recent decisions). The Ninth Circuit has "construed the common law to allow an unjust enrichment cause of action through quasi-contract." *Id.*; *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.") (internal quotation omitted).

1    by Plaintiffs and Class members with full knowledge that they were not lawfully entitled to it."

2    Compl. ¶¶ 137, 139 (Mylan has been "unjustly enriched, in the form of inflated prices").   That

3    allegation is insufficient to state a claim for unjust enrichment.

4          Plaintiff Corcoran's California unjust enrichment claim fails because, as discussed above,

5    the Complaint does not adequately plead that Mylan "has been unjustly conferred a benefit

6    'through mistake, fraud, coercion, or request.'"  *Astiana*, 783 F.3d at 762 (quoting 55 Cal. Jur. 3d

7    Restitution § 2).  The Complaint does not detail an actionable misrepresentation or omission that

8    could give rise to a claim, nor does it allege coercion or some other form of "unjust" behavior.

9    *See Rojas-Lozano*, 159 F. Supp. 3d at 1120.  As with the rest of their claims, Plaintiffs have

10   identified no wrong other than their subjective belief that they paid too much for EpiPen devices.

11         Plaintiff Beaulieu's unjust enrichment claim should be dismissed because, under

12   Massachusetts law, "[t]he availability—regardless of the likelihood of success—of a claim under

13   chapter 93A precludes a claim for unjust enrichment."  *Ferreira v. Sterling Jewelers, Inc.*, 130 F.

14   Supp. 3d 471, 487 (D. Mass. 2015).  Plaintiff Beaulieu has asserted a separate claim under

15   chapter 93A.   Thus, his unjust enrichment claim is duplicative and should be dismissed.

16   Furthermore, his unjust enrichment claim suffers from the same fatal defect as Plaintiff

17   Corcoran's:  he received the benefit of his bargain and was not coerced or misled.  *See, e.g.*,

18   *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-cv-11377-FDS, 2016 WL 393215, at *8 (D. Mass.

19   Feb. 1, 2016) (dismissing claim for unjust enrichment because there was no allegation plaintiff

20   "did not receive the merchandise she attempted to purchase or that she paid more than its true

21   value").   The mere fact that Plaintiffs think Mylan's conduct was "unjust" does not give rise to

22   an unjust enrichment claim.   Plaintiffs must plead plausible allegations to show that they are

23   entitled to relief as a matter of law, which they have not done.

24   **VIII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY JUDGMENT**
     **(COUNT VIII).**

25         Plaintiffs' claim for declaratory judgment (Count VIII) also should be dismissed because

26   Plaintiffs have not identified an "actual controversy."   The Declaratory Judgment Act authorizes

27   courts to "declare the rights and other legal relations of any interested party seeking such

28

- 24 -

declaration," so long as the declaration is sought "in a case of actual controversy within the Court's jurisdiction." 28 U.S.C. § 2201(a). "However, the Declaratory Judgment Act does not provide an independent basis for jurisdiction." *Ctr. for Sci. in Pub. Interest v. Bayer Corp.*, No. C 09-05379 JSW, 2010 WL 1223232, at *4–5 (N.D. Cal. Mar. 25, 2010) (White, J.) (quoting *Luttrell v. United States,* 644 F.2d 1274, 1275 (9th Cir.1980)). Because Plaintiffs lack standing to assert their consumer protection and common law claims, "there is no jurisdiction to hear the declaratory relief claim as there is alleged no case or controversy between the parties." *Id.*; *see* Section I *supra* (Plaintiffs have not pled injury-in-fact). Furthermore, the claim for declaratory judgment should fall along with the rest of the Complaint because Plaintiffs have failed to state an underlying claim—and "without an underlying claim, Plaintiff[s] ha[ve] no right to a declaratory judgment." *Id.* (quoting *Church of Scientology Int'l v. Kolts,* 846 F. Supp. 873, 882 (C.D. Cal.1994)).

## CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety and with prejudice.

Dated:  December 16, 2016          HOGAN LOVELLS US LLP

By: */s/ Robert B. Hawk*
    Robert B. Hawk

Attorneys for Defendants
MYLAN PHARMACEUTICALS INC.
and MYLAN SPECIALTY L.P.